IRENE C. ALBRIGHT et al., Respondents, *v.* JEFFERSON COUNTY NATIONAL BANK, Appellant.

Argued November 18, 1943; decided January 13, 1944.

· *Loren E. Harter* and *Daniel Scanlon* for appellant.  I. The Official Referee correctly held that the securities corporation was neither the *alter ego* of nor a department of the bank. (*People* v. *American Bell Tel. Co.*, 117 N. Y. 241; *Stone* v. *Cleveland, C., Chicago & St. L. Ry. Co.*, 202 N. Y. 352; *Brock* v. *Poor*, 216 N. Y. 387; *Elenkreig* v. *Siebrecht*, 238 N. Y. 254; *Berkey* v. *Third Ave. Ry. Co.*, 244 N. Y. 84; *Lowendahl* v. *B. & O. R. R. Co.*, 247 App. Div. 144, 272 N. Y. 360; *Matter of Lawyers Mtge. Co.* [8718 Ridge Blvd.], 284 N. Y. 371; *Ross* v. *Jacobowitz*, 216 App.

Div. 184; *Matter of Watertown Paper Co.,* 169 F. 252; *Esmond Mills* v. *Commr. of Internal Revenue,* 132 F. 2d 753; *Nichols & Co.* v. *Secretary of Agriculture,* 131 F. 2d 651; *Brown* v. *Brockton Nat. Bank,* 305 Mass. 521; *Gledhill* v. *Fisher & Co.,* 272 Mich. 353.) II. It was improper to surcharge the trustee bank with the sum paid for the apartment bonds. There was no profit received thereon by the securities corporation, but instead there was a small loss. III. Even though it be considered that the securities corporation was the *alter ego* of or a department of the trustee bank, such relationship was in no way the cause of the loss in market value of the challenged securities. (*Lowendahl* v. *Baltimore & Ohio R. R. Co.,* 247 App. Div. 144, 272 N. Y. 360; *Matter of Adriance,* 145 Misc. 345; *Chapter House Circle of Kings Daughters* v. *Hartford Nat. Bank & Trust Co.,* 121 Conn. 558; *Matter of Gutherie,* 320 Penn. St. 530; *Springfield Safe Deposit & Trust Co.* v. *First Unitarian Society,* 293 Mass. 480; *Costello* v. *Costello,* 209 N. Y. 252; *Matter of Smith,* 279 N. Y. 479.) IV. If the challenged securities are to be held void, that voiding must date back to the purchase of each security, and interest at the stipulated rate of four per cent must be computed from the date of purchase. The Appellate Division erred in allowing the plaintiffs to retain the high interest paid prior to the depression, while in effect requiring the trustee bank to guarantee the principal after the depression together with four per cent interest. (Restatement of the Law of Trusts, § 210; 2 Scott on Trusts, § 210; *Villard* v. *Villard,* 219 N. Y. 482; *Baker* v. *Disbrow,* 18 Hun 29, 79 N. Y. 631; 3 Bogert on Trusts, § 708; *Matter of Peck,* 152 Misc. 315; *Matter of Jones,* 155 Misc. 315.) V. The final judgment is erroneous in that the trustee bank is surcharged with expense items aggregating $74.86, to which no objections were made by plaintiffs until application at Special Term for final judgment and concerning which defendant bank was denied the right to offer any explanation. (*Matter of Gordon,* 166 Misc. 363; *Matter of Melzak,* 153 Misc. 600.)

*Harold L. Allen* and *A. Raymond Cornwall* for respondents. I. The relationship between the trustee and the securities corporation was such that it tainted the challenged transactions between them. (*Magruder* v. *Drury,* 235 U. S. 106; *Munson* v. *Syracuse, G. & C. R. R. Co.,* 103 N .Y. 58; *Matter of Hufnagel,* 258

App. Div. 1088; *Shanley* v. *Fidelity Union Trust Co.*, 108 N. J. Eq. 564; *Pyle* v. *Pyle,* 137 App. Div. 568.) II. The Appellate Division properly set aside the challenged transactions. (*Meinhard* v. *Salmon,* 249 N. Y. 458; *Wendt* v. *Fischer,* 243 N. Y. 439; 3 Pomeroy's Equity Jurisprudence, 4th ed., § 1077; *Magruder* v. *Drury,* 235 U. S. 106; *Taussig* v. *Hart,* 58 N. Y. 425; *Munson* v. *Syracuse, G. & C. R. R. Co.,* 103 N. Y. 58; *Baxter* v. *Union Industrial Trust & Sav. Bank,* 273 Mich. 642; *Matter of Culhane,* 269 Mich. 68; *Matter of Long Island Loan & Trust Co.,* 92 App. Div. 1; *Shanley* v. *Fidelity Union Trust Co.,* 108 N. J. Eq. 564; *Matter of Lawyers' Westchester Title & Mtge. Co.,* 162 Misc. 531.) III. The surcharge rule applied below is an equitable one. (*Matter of Tuttle,* 162 Misc. 286; *Villard* v. *Villard,* 219 N. Y. 482.)

LEHMAN, Ch. J. The defendant bank was appointed trustee under a deed of trust executed by Alexander Copley in May, 1924, and a deed of trust executed by him in November, 1926. In 1928, after the death of the settlor, the beneficiary and the remainderman of the trust created by the settlor brought this action to compel the trustee to render an account of its acts, conduct and proceedings. The plaintiffs allege in their complaint, '' upon information and belief, the defendant herein, in violation of its duty as Trustee of the aforesaid trust, has improperly, improvidently and unlawfully administered the same by investing the said fund in a manner and in securities unauthorized by law and in violation of the terms of the aforesaid agreements.'' The defendant trustee denied these allegations but did not deny its obligation to account. Accordingly the parties stipulated that an interlocutory judgment should be entered providing that the trustee should file its account; that the plaintiffs might file objections thereto; and that the issues raised by such objections should be referred to Hon. ERNEST I. EDGCOMB as Official Referee to hear and determine.

The plaintiffs filed no objections to the account of the trustee under the deed of trust executed in May 1924. We are concerned only with objections to the account of the trustee under the deed of trust of November 1926. The evidence conclusively establishes, and both the Official Referee and the Appellate Division have held, that the transactions complained of were

conducted openly and under a claim of right and without negligence or willful wrongdoing. The objections of the plaintiff are based primarily upon the fact that the trustee purchased some securities for the trust estate from Jefferson Securities Corporation, a corporation closely affiliated with itself; and that in other transactions the trustee employed Jefferson Securities Corporation and paid commissions to it as broker in the purchase of securities from other owners. The plaintiffs state in their objections that: " The Securities Corporation was, in law, the Trustee " and they urge that the Trustee should be surcharged with the purchase price of securities purchased from Jefferson Securities Corporation on the ground that the Trustee was dealing with itself in these transactions, and should be surcharged with commissions paid to the Securities Corporation as broker in other transactions, because in effect such commissions constitute profits unlawfully taken by the trustee for itself.

The referee upon undisputed evidence found that in 1918 the Board of Directors of the defendant bank adopted a resolution " that in the opinion of this Board, there should be organized by the stockholders of this bank a Securities Corporation to co-operate with the bank in the purchase and sale of securities and of the taking of title to property where necessary, provided and with the understanding that in so far as it is possible with the co-operation of the stockholders of the bank, the stockholders of the Securities Corporation should be identical with the stockholders of the Bank, and that the directors of the Securities Corporation be selected from the directors of the bank.".

At a subsequent meeting the Board of Directors approved " of a form of agreement for the organization of a securities corporation to be known as ' The Jefferson Securities Corporation,' and of the certificate of incorporation ". The purpose of the plan or agreement to organize the Security Corporation was expressed in the ". Whereas " clause of the resolution of approval as follows: " Opportunities for making desirable investments and for performing services, other than those which are possible in the ordinary course of banking business, are, from time to time, presented to the officers of the Bank, which they desire to make available to the shareholders of the Bank and to the public."

The evidence establishes, and the Official Referee found, that the plan provided that the capital stock of Jefferson Securities Corporation should be divided into five hundred shares of $100 each and should be issued to Trustees and held by them for the shareholders of the Bank. That " each shareholder of the Bank, through the ' Trustees,' should have the right to a beneficial interest in the capital stock of the proposed corporation and would become in effect owner of stock in the proposed corporation to the extent of one-twenty-fifth of the par value of the stock of the Bank owned by him and registered in his name ". That the initial capital was to be procured by means of a special dividend of the Bank to be paid to its stockholders, and to be applied " to payment of an equivalent amount of stock " of the proposed corporation. That each director of the proposed corporation should be either a " Trustee " or an officer or director of the bank and that the agreement should be binding when approved by subscribers holding three-fourths in amount of the capital stock of the defendant bank.

The plan was approved by the stockholders of the Bank and Jefferson Securities Corporation was incorporated and has been doing business in accordance with the plan since 1919. On each certificate of stock which has been issued, a statement is indorsed showing that it is held by Trustees " in trust, for the benefit of the shareholders of the Jefferson County National Bank ". During the period when the transaction now challenged took place, the seven directors of the Securities Corporation were also members of the Board of Directors of the Bank; and the beneficial owners of the stock of the Securities Corporation were the stockholders of the Bank. Though each corporation maintained a separate corporate existence, did a separate business, maintained a separate staff which was separately housed, and though the profits made by the Securities Corporation never reached the treasury of the Bank and possible losses could not reduce the moneys available for payment of the creditors of the Bank, yet the profits of the Securities Corporation enured solely to the benefit of the stockholders of the Bank in the same proportion as the profits of the Bank, and the same stockholders and the same directors controlled both corporations.

Upon these undisputed facts and the findings based upon them, the learned Official Referee rejected the objections of the plaintiffs and refused to surcharge the Trustee either with the purchase price of securities which the Trustee bought from the Securities Corporation, or with profits made by the Securities Corporation. Among the " conclusions " embodied in his formal decision are:

" 1. That the Jefferson Securities Corporation was not an instrumentality, a department or the alter ego of the defendant Bank in the making of the investments to which the plaintiffs have objected; neither were the two corporations identical, nor were they in law or in fact to be considered herein in effect as the same legal person.

" 2. That the defendant Bank did not purchase or acquire from itself any of the trust securities to which the plaintiffs have objected, nor was there any ' self-dealing ' on its part in reference thereto.

" 3. That the defendant Bank did not receive, directly or indirectly, any secret profits, commissions or other unlawful advantage in the purchase or in the handling of the securities to which the plaintiffs have objected.

" 4. That the defendant Bank, either as Trustee or otherwise, did not act improperly, improvidently or unlawfully in the investment of the trust funds herein, or in administering or managing the trust estate."

Upon appeal to the Appellate Division the judgment of the Official Referee was reversed " on the law and facts ". The Appellate Division did not, however, change or disturb the findings of fact made by the Official Referee except that it modified two findings in manner not material to the question we are now considering, and made some new findings in accordance with requests to find of the plaintiffs which the Official Referee had rejected. The substance of these requests to find was, for the most part, embodied in findings made by the Official Referee, and do not materially affect the conclusions of the Official Referee. These " conclusions " were not expressly reversed by the Appellate Division, nor were other formal " conclusions " substituted for them, but the Appellate Division embodied in the order of reversal the following " Memorandum ":

"The relation between the corporate trustee and the Securities Corporation was such, that in our opinion the beneficiary is entitled to have the transactions in question set aside and a surcharge made (Restatement of the Law of Trusts, § 170, p. 436; *Munson* et al., v. *S. G. & C. R. R. Co.,* et al., 103 N. Y. 59, 73; *Wendt* v. *Fischer,* 243 N. Y. 439, 443; *Estate of Shanley* v. *Fidelity Union Trust Co.,* 108 N. J. Eq. 564, 565; *Baxter* v. *Trust & Savings Bank,* 273 Mich. 642, 646, 647). It is undisputed that the transactions complained of were conducted openly and under a claim of right and without negligence or wilful wrongdoing. In view of these circumstances the trustee should not be penalized by loss of commissions or removal from office. It should be charged with the purchase price in each transaction plus interest at a rate commensurate with the average rate of earnings on trust funds during the same period. It should be credited with the amount of any recoveries of cash actually returned to the trust including any income actually received on such investments. The balance should be restored to the trust. (See *Matter of Tuttle,* 162 Misc. 286, 294.) We approve the method of computation as shown on Exhibits 55–72, except that the profit or commission taken by the Securities Corporation should not be added to the purchase price. We conclude from the evidence that it is in each transaction, included in the purchase price."

By the order of reversal of the Appellate Division the matter was " remitted to the Special Term to determine the rate of interest to be applied not to exceed 4½%, make computations and to enter a judgment " in accordance with the memorandum. The trustee appealed to the Appellate Division from the final judgment entered at Special Term after the court had made such computation and now appeals to this court from the judgment entered upon the order of the Appellate Division unanimously affirming the final judgment.

The Securities Corporation was organized to conduct, for the profit of the shareholders of the defendant National Bank, a type of business which could not be conducted lawfully by a national bank at the risk of the depositors and other creditors of the bank. Other national banks have formed similar corporations for similar purposes. So long as the corporations maintain their separate corporate entities, the conduct of business,

not permitted to a national bank, by a corporation with the same stockholders and directors as the national bank and operated for the profit of the stockholders of the bank is lawful and has been generally recognized as lawful. The formation of such a corporation is not an evasion of the banking laws intended for the protection of the depositors and other creditors of the bank, since it does not subject to any additional risk the capital or assets of the bank available for the payment of such depositors or other creditors. Here the men who controlled both corporations scrupulously maintained their separate corporate entities. The Securities Corporation never became an agency of the bank for the purpose of promoting the corporate business of the bank. The maintenance of the separate corporate entities is no fraud upon the public and causes no injustice to any person and contravenes no public policy. Disregard of the separation of the corporate entities by the courts would thwart the policy of the banking laws which are intended to safeguard against ordinary commercial risk the capital of a bank. We agree for these reasons with the conclusion of the Official Referee that neither principle nor authority would in such circumstances justify the court in treating the Securities Corporation as the *alter ego* of the Bank. It does not follow, however, that the Bank should not be surcharged as Trustee with the purchase price of securities which it bought from the Securities Corporation.

This court has recently said in considering a similar problem that the question is not whether a corporate trustee and an affiliated corporation are '' separate legal entities '' but whether the trustee has placed itself in a position '' where its interest was or *might be* in conflict with its duty. Either is sufficient to cause surcharging of the trustee.'' (*Matter of Ryan,* 291 N. Y. 376, decided December 2, 1943.) The court pointed out in that case that the rule is '' inflexible '' that a trustee may not deal with himself or put himself in a position where his interest might be in conflict with his duty. Included within its scope is every situation in which a trustee chooses to deal with another in such close relation with the trustee that possible advantage to such other person might influence, consciously or unconsciously, the judgment of the trustee who is in duty bound to consider only the interest of his *cestui que trust.* Where, as in *Matter of*

*Ryan, supra,* and in this case, the corporate trustee has dealt with another corporation which, though affiliated with the trustee, is a separate legal entity not wholly under the dominion of the trustee, "we are remitted to the tests of honesty and justice." Though in the *Ryan* case the writer of this opinion did not concur in the conclusion of the court, that the evidence established that the trustee had breached its obligation to the *cestui* to refrain from placing itself in a position where a strain might be placed upon its duty of undivided loyalty, here we find no room for difference of opinion that since the trustee dealt with a corporation which had been organized and is controlled by the stockholders and directors of the trustee, and the stockholders of the trustee share in the profits made by the seller in the same proportion as they share in the profits of the trustee, the trustee subjected its duty of undivided loyalty to the same strain to which it would have been subjected by direct dealing of the trustee with itself. The trustee, we may assume, acted with a view solely to the best interests of its *cestui,* uninfluenced by the fact that its stockholders might profit by the purchase from the Securities Corporation. Indeed, the amount of that profit was so small that such inference is perhaps inescapable. The law, however, does not inquire whether the transaction was fair or unfair. The value of the rule depends in part upon its rigorous and inflexible enforcement. If a corporate fiduciary has placed itself in a position where its interest or the interests of its stockholders *may* conflict with the interests of the *cestui,* the law " stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case." (*Munson* v. *Syracuse, Geneva & Corning R. R. Co.,* 103 N. Y. 58, 74; *Wendt* v. *Fischer,* 243 N. Y. 439.) We agree with the Appellate Division that for these reasons the plaintiffs are entitled to demand that each transaction shall be set aside where the trustee dealt with its affiliate in the purchase of securities — nor do we draw any distinction between the transactions where the affiliate acted only as broker for a reasonable commission and those where the affiliate sold the securities for a small profit. At the instance of the *cestui,* all such transactions may be set aside.

A different problem is, however, presented where there has been no capital loss in the investment and the transaction has *not* been set aside and the trustee has *not* been surcharged with the purchase price, but has been surcharged with a commission of three per cent paid to the affiliate which acted as broker in the transaction. The courts below have found that, in the challenged transaction, the commission was '' no more than was customarily charged and taken by any broker ''. If the commission had been paid by the trustee to itself, the trustee would nevertheless have been chargeable with the profits it wrongfully made, and if the Securities Corporation were in effect the trustee and not a separate legal entity, the trustee would be compelled to account for the profits in form paid to its *alter ego.* Here, however, as we have said, the separate corporate entities may not be disregarded. The commissions went into the treasury of the Securities Corporation, and though the stockholders of the trustee may profit indirectly, the corporate trustee has made no profit and can make no profit. It cannot be called to account for profits it never earned or received. (*Wendt* v. *Fischer, supra.*) The judgment against the defendant should be modified by eliminating the sum of $645 the amount of the commissions paid in such transactions.

We find also some small errors in the computation of interest where the trustee has been surcharged with the purchase price. The parties have stipulated that ''the average rate of earnings on trust funds during the period involved in this action * * * may be fixed by the Court at Special * * * Term at the rate of 4% ''. When a transaction is set aside and the trustee surcharged with the purchase price, the trustee should, as the Appellate Division directed, be surcharged also with '' interest at a rate commensurate with the average rate of earnings on trust funds during the same period.'' (264 App. Div. 824, 825.) In some instances, more than the average rate of interest was paid during part of the period on the securities purchased by the trustees. The *cestui* has not been required to account for the interest received during that period, but the trustee has been directed to pay interest at the rate of four per cent when the return was less. When the transaction is set aside, the *cestui* must be put so far as possible in the same situation as if the purchase had not been made. The *cestui* may

claim replacement of " the original fund, with interest "
(*Baker* v. *Disbrow,* 18 Hun, 29, 30, affd. on opinion below, 79
N. Y. 631), but then must account to the trustee for interest and
profits received by him.   (Restatement of the Law of Trusts,
§ 206; see, also, § 205, comment h, and § 211, comments c and f.)
In effect the transactions have in this case been set aside as of
the date when the investment ceased to be profitable.   That is
error.

There was also error in surcharging the trustee with items
of expense aggregating $74.86 to which timely objection was
not made.   We find no other errors.

The judgments should be modified in accordance with this
opinion, and as so modified affirmed, without costs.

LOUGHRAN, RIPPEY, LEWIS, CONWAY, DESMOND and THACHER,
JJ., concur.

Judgment accordingly.